UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br>HOKU CORPORATION,<br>    Debtor.<br><br>R. SAM HOPKINS, Chapter 7 Trustee,<br>    Plaintiff,<br>        v.<br>THE CLEAN AIR GROUP, LLC, an affiliate of CROLL REYNOLDS CLEAN AIR TECHNOLOGIES, INC., a New Jersey corporation, and John Does 1 through 10,<br>    Defendants. | Case No. 4:15-cv-398-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is defendant The Clean Air Group, LLC's Motion to Withdraw the Reference (Dkt. 1). The Court will grant the motion to the extent defendant asks the Court to withdraw the reference when this case is ready for trial, but will deny the motion to the extent defendant seeks an immediate withdrawal.

**MEMORANDUM DECISION & ORDER - 1**

## BACKGROUND

This adversary proceeding traces its roots to the planned construction of a polysilicon manufacturing plant in Pocatello, Idaho. Defendants say that in 2007, the debtor, Hoku Corporation, began working with its wholly owned subsidiary, Hoku Materials, Inc., to construct the plant.

For reasons not relevant here, the plant was not completed, and in July 2013, Hoku Materials and Hoku Corporation filed separate bankruptcy cases. In the summer of 2015 – roughly two years after these bankruptcy cases were filed – Hoku Corporation's Chapter 7 Trustee initiated approximately 175 adversary proceedings against various contractors and suppliers involved in the construction. These contractors and suppliers had previously received full or partial payment for goods and services delivered. The Trustee contends that these payments constitute fraudulent transfers. He therefore seeks to have these monies returned to Hoku Corporation's bankruptcy estate.

The Trustee's theory is that the contractors and suppliers were allegedly paid by Hoku *Corporation,* but they performed work for Hoku *Materials.* More precisely, the Trustee says that Hoku Corporation never had any legal or equitable title in the polysilicon plant and thus has no liability for Hoku Materials' polysilicon plant construction costs or Hoku Materials' debts.

With some exceptions, the Trustee's complaints against the contractors and suppliers follow the same formula. In his first claim for relief, the Trustee invokes the federal Fair Debt Collection Practices Act (FDCPA) in his effort to recover the payments. In his second claim, the Trustee invokes Idaho's fraudulent transfer statutes. In a third

claim for relief, alleged against some (but not all) of the contractors and suppliers, the Trustee invokes 11 U.S.C. § 548.

In bankruptcy court, three of these adversary defendants – JH Kelly, LLC, Industrial Piping, Inc., and Bannock County – moved the bankruptcy court to substantively consolidate Hoku Corporation's and Hoku Materials' bankruptcy estates. *See July 28, 2015 Motion for Substantive Consolidation & Request for Case Management Conference, In re Hoku Materials*, Case No. 13-40837-JDP, Bankr. Dkt. 336. These defendants say that if the bankruptcy court grants the motion, most of the adversary proceedings against the contractors and suppliers would be eliminated. Numerous defendants joined this motion.

After the substantive consolidation motion was filed, the bankruptcy court ordered the contractor/supplier defendants in the adversary proceedings to either: (1) consent to entry of judgment by the bankruptcy court; or (2) move to withdraw the reference. As of this date, roughly half of the adversary defendants, including the defendant in the above-captioned action, responded with a motion to withdraw the reference.

## ANALYSIS

Federal district courts have original jurisdiction over cases arising under the Bankruptcy Code. 28 U.S.C. § 1334(a). This Court has exercised its authority under 28 U.S.C. § 157(a) to refer all bankruptcy matters to the district's bankruptcy judges. *See Apr. 24, 1995 Third Amended General Order.* Nevertheless, under 28 U.S.C. § 157(d), this reference is subject to mandatory or permissive withdrawal, depending on the circumstances. *See* 28 U.S.C. § 157(d). Section 157(d) reads as follows:

**MEMORANDUM DECISION & ORDER - 3**

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Most of the defendants seeking withdrawal contend that both mandatory and permissive withdrawal apply.

### A.   Mandatory Withdrawal

As the statute specifies, withdrawal is mandatory in cases requiring material consideration "of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.*

Preliminarily, the Court is not convinced that withdrawal is mandatory if a bankruptcy court must consider state law along with bankruptcy law to resolve a claim. The plain language of the statute refers to federal laws – not state laws. *See id.* (referring to "other laws *of the United States*") (emphasis added). So the key question is whether the Trustee is asking the bankruptcy court to consider federal, non-bankruptcy law.

He is. In his first claim for relief, the Trustee invokes the FDCPA. The FDCPA is indisputably a non-title 11, federal law that affects interstate commerce. *See* 15 U.S.C. § 1692a(6). So if the statutory language were strictly interpreted, this Court must withdraw the FDCPA claim without further analysis.

But the Court concludes that a more searching inquiry is necessary. The problem with strictly interpreting the statute is that withdrawing disputes requiring even the most basic consideration of non-bankruptcy law "would force district courts to withdraw

matters in which [Bankruptcy] Code questions overwhelmingly predominate and consideration of non-Code statutes would be de minimus." *In re White Motor Corp.*, 42 B.R. 693, 703 (N.D. Ohio 1984).  The alternative, more favored, interpretation requires that the consideration of non-bankruptcy law be "substantial and material" before withdrawal is mandatory. *See, e.g., Holmes v. Grubman*, 315 F. Supp. 2d 1376, 1379 (M.D. Ga. 2004). According to this view, "the 'resolution of non-bankruptcy law must be essential to the dispute.'"  *Id.*  (citation omitted).  The Ninth Circuit has not indicated which standard courts should apply, but has approved the "substantial and material" standard in dicta.  *Sec. Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1008 n.4 (9th Cir. 1997).  This Court will therefore adopt that standard in examining the FDCPA claim at issue here.  *Accord Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 222 (D. Haw. 2006).

In his FDCPA claim, the Trustee seeks to avoid transfers made to defendants using his strong-arm powers, found in 11 U.S.C. § 544(b)(1), along with 28 U.S.C. § 3304 of the FDCPA.  Under § 544(b)(1), a trustee may avoid "any transfer ... or any obligation incurred by the debtor that is voidable under *applicable law*" by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.  *See* 11 U.S.C. § 544(b)(1) (emphasis added).  The Trustee relies on the FDCPA as "applicable law" in his effort to take advantage of the FDCPA's six-year reach-back period to set aside payments made to defendants.  *See* 28 U.S.C. § 3306(b).  (Idaho's fraudulent transfer laws have a four-year reach-back period.  *See* Idaho Code § 55-918 (1) and (2)).

Several adversary defendants dispute the use of the FDCPA as "applicable law"

**MEMORANDUM DECISION & ORDER - 5**

within the meaning of Section 544(b). To resolve the Trustee's claims, the reviewing court must therefore determine whether the trustee can step into the shoes of a federal creditor and use the FDCPA as "applicable law" under § 544(b)(1). The Ninth Circuit has not confronted this issue, and there is a split of authority among the courts that have decided the issue. *See Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 905 (Bankr. M.D. Ga. 2015) (discussing the split and citing cases).

Under these circumstances, the Court concludes that resolving the Trustee's FDCPA claim extends beyond applying well-settled, federal, non-bankruptcy law. Therefore, the Court will withdraw the reference as to Count I of the Trustee's complaint in this action. But the Court will not withdraw the reference at this stage for at least three reasons.

*First*, just because withdrawal is mandated does not mean the Court must immediately withdraw the reference. Rather, the Court concludes that it may delay withdrawing the reference until the bankruptcy court certifies that the case is trial-ready. *Accord Beck v. Ally Fin., Inc.*, Case No. 13-mc-16, 2013 WL 5676232, at *1 (S.D. Ala. Oct. 18, 2013) (district court granted motion for withdrawal after determining mandatory withdrawal applied, but nevertheless "delay[ed] the withdrawal until the Bankruptcy Court certifies that the case is ready for trial"); *cf.* 1 *Collier on Bankruptcy* ¶ 3.04[2] (16th ed. 2015) (observing that even when withdrawal is mandatory, district courts have permitted bankruptcy courts to conduct pretrial proceedings, citing *PBGC v. Pan Am Corp. (In re Pan Am Corp.)*, 133 B.R. 700, 701 (S.D.N.Y. 1991) (although withdrawal was mandatory, the district court remanded the case to the bankruptcy court to submit

proposed findings of fact and conclusions of law)).

*Second,* the vast majority of the adversary defendants who have filed a withdrawal motion are not asking for an immediate withdrawal.  For example, dozens of defendants say this in their moving papers:

> Defendant does not request that the withdrawal be immediate because a certain Motion for Substantive Consolidation . . . is under consideration by the Bankruptcy Court.  Rather, this Motion to Withdraw Reference is filed to meet the timeliness duty imposed by the Bankruptcy Court but it could simply be stayed at this time.

*See, e.g., Hopkins v. Chem. Design, Inc.*, Case No. 4:15-cv-395-BLW, *Motion to Withdraw,* Dkt. 1, at 2.  These same defendants also simply ask the Court to "withdraw the reference of this Adversary Proceeding from the Bankruptcy Court *at the appropriate time prior to trial.*"  *Id.*, Dkt. 1-1, at 6 (emphasis added).

Other defendants say they "understand[] that this Court may decide to have the Bankruptcy Court handle the preliminary matters, [to] which the Defendant has no objection provided that there is no waiver of the Defendant's right to a jury trial before this Court and no consent to entry of final orders or judgments by the Bankruptcy Court." *Reply Br. in Hopkins v. SetPoint Integrated Solutions, Inc.*, Case No. 4:15-cv-391-BLW, Dkt. 3, at 8 n.3; *see also Praxair Servs., Inc.'s Reply Br.*, Case No. 4:15-cv-412-BLW, Dkt. 3 at 4 ("Withdrawal would not cause inefficient use of judicial resources because the Bankruptcy Court can be assigned or referred the pre-trial procedure, and this Court can then convene the jury for trial.")

*Third*, as detailed below, this Court is not persuaded that an immediate withdrawal would best serve the parties or the courts.  *See infra* ¶ 2.

**MEMORANDUM DECISION & ORDER - 7**

In sum, this Court concludes that although it must eventually withdraw the reference of the Trustee's first claim for relief, it will not do so now.

**2.    Permissive Withdrawal**

The next question is whether the "cause" factors associated with permissive withdrawal weigh in favor of an immediate withdrawal.  Withdrawal is permissive in any case or proceeding referred to a bankruptcy court upon the district court's own motion, or on a party's timely motion for "cause shown."  28 U.S.C. § 157(d).  The statute does not specify what is necessary to show "cause," but courts have identified a variety of factors that may be considered, including: (1) the efficient use of judicial resources; (2) delay and costs to the parties; (3) uniformity of bankruptcy administration, (4) prevention of forum shopping; and (5) other related factors.  *Sec. Farms,* 124 F.3d at 1008.  "Other related factors" might include whether the issues are core or non-core proceedings, as well as the right to a jury trial.  *See Rosenberg v. Harvey A. Brookstein*, 479 B.R. 584, 587 (D. Nev. 2012) (citation omitted).

   **A.  Seventh Amendment Jury-Trial Right**

The Court begins by observing that the fraudulent conveyance claims at issue in this case are statutorily defined as "core" proceedings.  *See* 28 U.S.C. § 157(b)(2)(H).  Congress has empowered bankruptcy courts to enter a final judgment on such claims.  *See* 28 U.S.C. § 157(b)(1).  But in the wake of the Supreme Court's landmark decision in *Stern v. Marshall,* 131 S. Ct. 2594 (2011), the Ninth Circuit held that bankruptcy courts lack the constitutional authority to enter final judgments on fraudulent conveyance claims.  *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012), *aff'd,* 134

S. Ct. 2165 (2014) ("fraudulent conveyance claims . . . cannot be adjudicated by non-Article III judges."). The Trustee, for his part, has not meaningfully challenged defendants' assertions that they have a right to a jury trial in district court on the fraudulent conveyance claims. Thus, if the fraudulent conveyance claims leveled against the defendant proceeds to trial, an Article III judge will preside. *See* 28 U.S.C. § 157(e);[1] *In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003) ("[T]he bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court."); *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990) (agreeing with "several courts [that] have concluded that where a jury trial is required and the parties refuse to consent to bankruptcy jurisdiction, withdrawal of the case to the district court is appropriate") (internal citations omitted)).

But this does not mean the Court must immediately withdraw the reference. Rather, it is permissible for the bankruptcy court to handle all preliminary matters up to the point of trial. *See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007) ("a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction" and transfer the case to district court). In fact, the Supreme Court recently clarified that so-called "*Stern* claims" – which include the fraudulent transfer claims at issue here – may comfortably proceed under the

---

[1] In full, 28 U.S.C. § 157(e) provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

**MEMORANDUM DECISION & ORDER - 9**

procedure set forth in 28 U.S.C. § 157(c)(1). *See Executive Benefits Ins. Agency v. Arkison,* 134 S. Ct. 2165, 2174 (2014). Section 157(c)(1) provides as follows:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

Thus, in this case, the bankruptcy court may "hear" the Trustee's fraudulent transfer claims, and submit proposed findings of fact and conclusions of law to the district court. *Id.* Further, if either party files a dispositive motion, the bankruptcy court may entertain that motion and submit proposed findings of fact, conclusions of law, and a recommended disposition of the claim to this Court. *See Bellingham Ins. Agency*, 702 F.3d at 565 (bankruptcy courts have the statutory power "to hear fraudulent conveyance cases and to submit reports and recommendations to district courts").

In light of this authority, the Court is not persuaded that defendants' jury-trial right requires a withdrawal at this stage. Rather, at this point in the proceedings, the Court's central concern is how it can best help the parties achieve a just, speedy, and inexpensive resolution of their claims. *Cf.* Fed. R. Civ. P. 1. Many of the other "cause" factors relevant to permissive withdrawal – including efficiency, cost, and delay – speak to this concern.

### B. Efficiency; Cost; Delay; Uniformity

This case is in its beginning stages, so it would seem that the case would move

along at the same speed in either district court or bankruptcy court. But that is not true here because the bankruptcy court has expended significant time and effort over the past two years becoming familiar with the underlying bankruptcy proceeding. That knowledge will almost surely enable the bankruptcy court to move this case along more quickly than this Court could. Further, although some defendants suggest that conducting pretrial proceedings in one court, and then moving to another for trial, will cause inefficiencies, there is a very real possibility that this case – like most cases – will resolve before trial.

Granted, if a case does proceed to trial, there will be judicial efficiency losses because a second court will have to familiarize itself with the case. Further, this Court may be required to conduct a de novo review of proposed findings and conclusions on dispositive motions. Such a procedure could increase costs to the parties and cause some delay. But these possible inefficiencies, delays, and costs do not overcome the weight this Court has placed on the familiarity the bankruptcy court has with the debtor, the bankruptcy estate, and the various other adversary proceedings pending in this bankruptcy case.

The Court also finds that the *Hoku Corporation* bankruptcy likely will be more uniformly administered if all of the "contractor/supplier" adversary cases remain before the same court for pretrial proceedings.

C. **Prevention of Forum Shopping**.

Lastly, regarding the forum-shopping factor, the Court is unpersuaded by the Trustee's assertion that the defendant has engaged in a blatant forum shopping. These

motions were made early in the proceedings, largely in response to the bankruptcy court's order that such motions be made within a fourteen-day period. This factor is therefore neutral.

## CONCLUSION

After having considered all of the above factors, the Court concludes that neither permissive nor mandatory withdrawal is warranted at this time. The Court will instead delay withdrawing the reference on the fraudulent transfer claims until the bankruptcy court certifies that such claims are ready for trial.

## ORDER

For all the foregoing reasons, **IT IS ORDERED that:**

1) Defendant's Motion to Withdraw the Reference (Dkt. 1) is granted in part, and denied in part, as follows:

2) The Motion is **GRANTED** to the extent defendant seeks a withdrawal when the bankruptcy court certifies that this case is ready for trial.

3) The Motion is **DENIED** to the extent defendant seeks an immediate withdrawal.

4) The bankruptcy court will preside over all pretrial matters in this case, including discovery and pretrial conferences, and will resolve routine and dispositive motions. If either party files a dispositive motion, the bankruptcy court will entertain that motion and submit proposed findings of fact, conclusions of law, and a recommendation for disposition to this Court.

5) If and when it becomes clear that a jury trial will be necessary, and the case is prepared and ready for trial to begin, the bankruptcy court shall so certify to this Court and the reference will be withdrawn at that time.

6) Until the bankruptcy court certifies that this case is ready for trial, the parties shall file all motions, pleadings, and other papers in the adversary proceeding in bankruptcy court.

DATED: October 7, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court